REMEDIO SOTELO RODRIGUEZ
OMAR RODRIGUEZ
7420 Mitchell Dr
Rohnert Park CA 94928
(213) 384-0060

Plaintiffs
In Pro Per

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REMEDIO SOTELO RODRIGUEZ OMAR RODRIGUEZ | CV Case No. 11 - 03705 |
| Plaintiffs, | COMPLAINT FOR RESCISSION AND DAMAGES, 15 U.S.C. § 1635, 12 C.F.R. § 226, 12 U.S.C. § 2601, ET. SEQ., QUIET TITLE, AND CALIFORNIA UNFAIR BUSINESS PRACTICE. |
| v. | |
| BAC HOME LOANS SERVICING RECONTRUST COMPANY | |
| Defendants. | DEMAND FOR JURY TRIAL |

COMES NOW, Plaintiffs REMEDIO SOTELO RODRIGUEZ AND OMAR RODRIGUEZ (hereinafter "Plaintiffs" or "REMEDIO SOTELO RODRIGUEZ AND OMAR RODRIGUEZ") file this civil action alleging that their Federal and state rights were violated as follows:

//

//

//

## **INTRODUCTION AND NATURE OF CONTROVERSY**

1.  This is a truth-in-Lending ("TILA") and Real Estate Settlement Procedure Act ("RESPA") case in which Plaintiff REMEDIO SOTELO RODRIGUEZ AND OMAR RODRIGUEZ  was fraudulently induced to enter into a loan  executed a deed of trust encumbering their home ("Mortgage Loan") through the use of unfair and deceptive acts and practices in violation of  the Truth-in-Lending Act and the Real Estate Settlement Procedures Act, as well as state Laws. Fraudulent representations concerning the payment terms of the Mortgage Loan were made to the Plaintiffs to include REMEDIO SOTELO RODRIGUEZ AND OMAR RODRIGUEZ to enter into the Mortgage Loan.  In addition, material disclosures in relation to the Mortgage Loan, required pursuant to the Truth-in-Lending Act and its Implementing Regulation, and required pursuant to the Real Estate Settlement Procedures Act and it's implementing Regulation, were concealed from the SOTELO. Nor were The SOTELO provided with a proper number of notices of their rights to cancel the transaction within the time period required by law, all in violation of PLAINTIFFS' clearly established rights under federal and state statutory and Common law.  In addition, Defendant **BAC HOME LOANS SERVICING and/**or its agent Intentionally hide documents from Plaintiffs related to the Mortgage Loan with the intention of Harming the Plaintiffs as part of a scheme to prevent the Plaintiffs from knowing The true term and conditions of the Mortgage Loan prior to entering into that Mortgage Loan and preventing the Plaintiffs from rescinding the Mortgage Loan If and when they ever discovered the true terms and conditions of the Mortgage Loan by using the forged Deed of Trust as the basis for arguing that the Plaintiffs' right to rescind the Mortgage Loan under federal law had expired.

2.  This action seeks rescission of the Mortgage Loan and statutory, compensatory, and punitive damages to vindicate the violation of the  SOTELO's federal and state rights.

3.  The SOTELO also seeks punitive damages against the Defendants in order

**COMPLAINT FOR RESCISSION**

1    To punish and set example for the wrongful conduct in violating federal and state

2    laws resulting in injury and damages to the SOTELO.

3    4.    The SOTELO also seeks reasonable costs of litigation, including, but not

4    limited to, attorneys' fees.

5

6                              **JURISDICTION AND VENUE**

7    5.    This action arises under 15 U.S.C. § 1635, 12 C.F.R. § 226, 15 U.S.C. § § 2601

8    and 2614, 12C.F.R. § 3500, and under California statutory and common law.

9    6.    This court has jurisdiction over the Federal claims in this action based on 18

10    U.S.C. § § 1331 and 1343 and 42 U.S.C. § 1983 which confer original

11    jurisdiction on federal district courts in suits to address the deprivation of rights

12    secured by federal law.  This Court also has supplemental jurisdiction over the

13    pendant state law claims because the state law claims are so related to the federal

14    claim that they form part of the same case or controversy under Article III of the

15    United States Constitution, pursuant to 28 U.S.C. § 1367.

16    7.    The unlawful conduct, illegal practices, and acts complained of alleged in this

17    Complaint were all committed in the Central District of California and the

18    Involved real property is located in the Central District of California.  Therefore,

19    Venue properly lies in this District, pursuant to 12 U.S.C. § 2614 and 28 U.S.C. §

20    1391(b).

21    //

22    //

23    //

24

25

26

27

28

## PARTIES

### Plaintiff

8.   Plaintiff REMEDIO SOTELO RODRIGUEZ AND OMAR RODRIGUEZ is a residents in California, and the real property secured by a deed of trust under the Mortgage Loan is located in Rohnert Park, California.

### Defendants

9.   Plaintiffs are informed and believe, and thereon allege, that Defendant BAC HOME LOANS SERVICING (Hereinafter "BAC HOME LOANS SERVICING")   is a nation banking institution Whose exact business form is unknown and at all times mentioned herein was Conducting business in California.  Plaintiffs are informed and believe that Defendant BAC HOME LOANS SERVICING is the owner of the Mortgage Loan.

10.   Plaintiffs are informed and believe, and thereon allege, that Defendant BAC HOME LOANS SERVICING Is a wholly owned subsidiary of  BAC HOME LOANS SERVICING and at all times mentioned herein was conducting business in California. Plaintiffs are informed and believe that Defendant  BAC HOME LOANS SERVICING Is the servicer of the Mortgage Loan.

11.   Plaintiffs are informed and believe, and thereon allege, that Defendant RECONTRUST COMPANY ("Trustee Services") whose exact business Form is unknown and at all times mentioned herein was conducting business in California. Plaintiffs are informed and believe that Defendant RECONTRUST COMPANY Trustee Services is the subsequent trustee of the Mortgage Loan and an agent of BAC HOME LOANS SERVICING .

12.   Plaintiffs are informed and believe, the licensed real estate broker and Notary Public which Licenses were issued by the California Department of Real Estate, were agents acting on behalf of BAC HOME LOANS SERVICING, conducting business In California.

## **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

13.  As a result of the failure of BAC HOME LOANS SERVICING to provide all of the disclosures required by State and federal law, and as a result of the false, fraudulent, and/or deceitful representations made to the Plaintiffs concerning the terms of the Mortgage Loan, Plaintiffs are entitled to rescind the Mortgage Loan.

14.  Plaintiffs are also informed and believe, and thereon allege, that the Defendant And one or more of its agents conspired to withhold disclosing the Truth-in-Lending disclosure Form required by federal law.

15.  That the Mortgage Loan entered into is a federally related mortgage loan as that Term is defined in the Real Estate Settlement Procedures Act at 12 U.S.C. § 2602(1).

16.  Plaintiffs are informed and believe, Neither the Broker , its principals nor  BAC HOME LOAN SERVICING ever Disclosed to the Plaintiffs that the entity acting as Mortgage Broker would also be acting as the Settlement Agent and would be receiving fees and other funds in Connection with such role at any time prior to the delivering of the final Settlement Statement to Plaintiff after entering into the Mortgage Loan.

17.  Plaintiffs are informed and believe, and thereon allege, that BAC HOME LOAN SERVICING gave and Broker and Agent accepted and received fees, payments and other things of value in return for the referral of the Mortgage Loan to BAC HOME LOANS SERVICING such giving accepting of the settlement agent fees and other things of value in return for the referral of the Mortgage Loan by Broker to BAC HOME LOANS SERVICING Was in Violation of 12 U.S.C. § 2607(a).

18.  The agency responsible for enforcing RESPA and its implementing regulation, Regulation X, the United States Department of Housing and Urban Development ("HUD"), issued a Statement of policy in 1999 establishing two-Part test for determining the legality of certain lender payment to mortgage Brokers under

RESPA as follows:

    (1) Whether goods or facilities were actually furnished or the services were

       Actually furnished or the services were actually performed for the Compensation

       paid, and;

    (2) Whether the payments are reasonably related to the value of the goods or

       Facilities that were actually furnished or services that were actually

       Performed.

19.  In 2001, HUD clarified its interpretation of § § 2607(a) and (b) when it issued its

      RESPA Statement of Policy 2001-1 entitled Clarification of Statement of Policy

      1999-1 regarding Lender Payments to Mortgage Brokers, and Guidance

      Concerning Unearned fees Under Section 8(b). ("Statement of Policy 2001-1.)

      HUD's 2001-1 Policy of Statement explains that the second prong of its two-part

      Test to determine the legality of lender payments to mortgage brokers may not be

      Satisfied when the loan brokers does not offer the borrower the option to pay a

      Lower amount of total fees upfront.

20.  Plaintiffs are informed and believe, and thereon allege, that  BAC HOME LOANS

      SERVICING  and others Knowingly and willfully conspired and agreed among themselves

      to commit the Acts described of herein with the intent to deprive Plaintiff of an amount to be

      Determined and proven at trial but in an amount that exceeds $15,000.00.

21.  Plaintiffs are informed and believe, and thereon allege, that BAC HOME LOANS

      SERVICING  and its agents  Did the acts and things herein alleged pursuant to, and in

      furtherance of, the Conspiracy and above-alleged agreement.

22.  Plaintiffs are informed and believe, and there on allege, that BAC HOME LOANS

      SERVICING and its agents Furthered the conspiracy by cooperation or lend aid and

      Encouragement to, or Ratified and adopted the acts of each other.

23.  As a proximate result of the wrongful acts herein alleged, Plaintiffs has suffered

      Damages in an amount to be determined and proven at trial but in an amount that

      Exceed $15,000.00

24.  In conspiring and acting in concert as herein alleged, BAC HOME LOANS SERVICING, either directly or Through the conduct, authorization or ratification by a BAC HOME LOAN SERVICING officer, director, or Managing agent, acted willfully and with the intent to cause injury to the Plaintiff. BAC HOME LOANS SERVICING is guilty of malice,oppression, and/or fraud in conscious disregard of the Plaintiffs' rights, thereby warranting and assessment of punitive damages in an amount appropriate to punish BAC HOME LOAN SERVICING and to STOP others from Engaging in similar conduct.

**FIRST CLAIM FOR RELIEF**

**(Against Defendant BAC HOME LOANS SERVICING, and DOES 1-50 for Rescission and**

**Damages**

**Pursuant to 12 U.S.C. § 1635, et.seq.)**

25.  Plaintiffs re-allege and incorporate by reference in this Claim for Relief each Allegation set forth in paragraph 1 through 24 above.

26.  The Mortgage Loan is subject to the federal Truth –in –Lending Act and its Implementing regulation, Regulation Z, because the Borrower under the Mortgage Loan, REMEDIO SOTELO RODRIGUEZ AND OMAR RODRIGUEZ is an individual and not a corporation, Partnership, or other entity, and because Plaintiff REMEDIO SOTELO RODRIGUEZ AND OMAR RODRIGUEZ used the loan  Proceeds for personal, family, or household purposes, and because the amount borrowed was, and is, subject to a finance charge and is to be repaid in 5 or more Installments, and because the Mortgage Loan is secured by Plaintiffs' principal Dwelling. Furthermore, the Mortgage Loan is not subject to any of the Exemptions set forth in the Truth-in-Lending Act and Regulation Z and it was Not a loan for business purposes.

27.  Because of the Mortgage Loan is subject to the Truth-in-lending Act and Regulation Z, BAC HOME LOANS SERVICING and its agents were required to deliver to the Plaintiffs REMEDIO SOTELO RODRIGUEZ AND OMAR RODRIGUEZ among other things, Good Faith Estimate, Notice of Right to Cancel.

BAC HOME LOANS SERVICING and Its agents failed to deliver the required disclosures and Right to Cancel to Plaintiff.

28. Therefore, the right to rescind the Mortgage Loan is extended to three-years.

29. Plaintiffs exercised its rights under California and federal laws by notifying BAC HOME LOANS SERVICING and RECONTRUST COMPANY Trustee Services of rescission of the Mortgage loan and tender under such rescission.

30. BAC HOME LOANS SERVICING and RECONTRUST COMPANY Trustee Services failed to take actions are required under the Truth-in-Lending Act and Regulation Z.

31. As a direct and proximate result of defendant's failure to take action in response To Plaintiffs' proper Notice of Rescission, Plaintiffs suffered damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

## (Against Defendant BAC HOME LOANS SERVICING , and DOES 1-50For Damages Pursuant to 12 U.S.C. § 2607)

32. Plaintiffs re-allege and incorporate by reference in this Claim for Relief each allegation set forth in paragraph 1 through 30 above.

33. The Mortgage Loan is a federally related mortgage loan and is subject to the Federal Real Estate Procedures Act (RESPA) and its implementing Regulation X.

34. Defendant BAC HOME LOANS SERVICING, never responded to Plaintiff's

35. Because the Mortgage Loan is subject to RESPA and Regulation X, all Defendants were required to comply with section 6 of RESPA appearing at 12 U.S.C. § 2605. Section 6 violations are further defined by Regulation X and 24 C.F.R. § 3500.21 (e) as "Duty of loan servicer to respond to borrower inquiries."

36. BAC HOME LOANS SERVICING violated section 6 of Regulation X upon receipt of Inquiries including but not limited to:

    a. Failure to response and take action upon receipt of Plaintiff's Qualified Written request as required by laws.

    b. Failure to make appropriate corrections in the account of the borrower,

Including the crediting of any late charges or penalties, and transmit to the

Borrower a written notification of the correction.

c.  Failure to protect Plaintiffs' credit rating upon receipt of Plaintiffs "QWR"

By continuing to furnish adverse information regarding payments to credit

Reporting agencies as defined in section 603 of the Fair Credit Reporting

Act, 15 U.S.C. 1681 a.

37.  As a direct and proximate result of the violations of RESPA and regulation X

By BAC HOME LOANS SERVICING , Plaintiff suffered damages in an amount to be

Proven At trial.

## THIRD CLAIM FOR RELIEF

**(Against Defendant BAC HOME LOANS SERVICING; AGENTS And DOES 1-50 Pursuant**

**to California unfair Business Practice – Business**

**And Professions § 17200 et.seq.)**

38.  Plaintiffs re- allege and incorporate by reference in this Claim for Relief each

Allegation set forth in paragraphs 1 through 37 above.

39.  Defendants have falsely, fraudulently and deceitfully represented to the

Plaintiffs as aforesaid which representations were relied upon by the Plaintiffs

Resulting in consummation of the Mortgage Loan and to the damage of Plaintiffs

In violation of the Consumer Credit Protection Act, as aforesaid.

40.  These defendants along with BAC HOME LOANS SERVICING violated the

Real Estate Settlement Procedures Act as set forth herein and the allegations of

Which are hereby incorporated in this cause of action by this reference.

41.  Such unfair, fraudulent and deceptive acts and omissions, and violation of state

Law are unfair business practices and constitute a violation of California

Common law and California Business & Professions Code § § 17200, et seq.

Plaintiffs reserve the right to identify additional unfair, fraudulent, or deceptive

Practices, or unlawful or unfair practices, by Defendants as may be established

1    Through discovery.

2  42.   As direct and proximate result of the unfair, fraudulent, and deceptive conduct

3        Describe above, as well as the result of their unlawful and unfair business

4        Practices as described above, this defendant has been and will be unjustly

5        Enriched.

6  43.   Plaintiffs, pursuant to California Business & Professions Code § 17203, seek an

7        Order of this Court enjoining these Defendants from further withholding and

8        Confiscating any of the monies, funds and property due to the Plaintiffs as a result of the

9        unfair business practices alleged herein, and compelling this Defendant to:

10       a.   Make restitution to Plaintiffs for all funds unfairly, unlawfully, fraudulently, and

11            deceptively obtained and retained by all Defendants identified herein and/or its agent as

12            a result of the wrongful acts as alleged herein and their violation of California common

13            law and California Business & Professions Code §§ 17200 et seq.; and

14       b.   Disgorge all revenues acquired and retained by all Defendants identified herein and/or

15            its agent as a result of the unfair, fraudulent, deceptive, unlawful business practices

16            alleged herein; and

17       c.   To take steps and actions reasonably and sufficiently necessary to rescind the Mortgage

18            Loan and to void any and all deeds of trust or other legal documents pertaining to the

19            property securing the Mortgage Loan.

20  44.  Plaintiffs are entitled to restitution of their property (tangible and intangible) and money

21       and funds, as that property, money and funds existed prior to the wrongful actions and

22       conduct of all Defendants identified herein and/or its agents.

23  45.  Plaintiffs also seek such additional equitable relief as may be necessary to provide a

24       complete remedy for Defendants identified herein and/or its agent's wrongful actions and

conduct, including without limitation, injunctive relief, restitution, and restoration of their unencumbered title interest in the real property.

46. Pursuant to federal law, Defendants identified herein, acting as a lender, owned statutory duties to the Plaintiffs.

47. Despite the statutory duties owned to the Plaintiffs, Defendants identified herein violated those statutory duties and, as a result thereof, took advantage of its relationship with the Plaintiffs and has been, and is being, unjustly enriched thereby.

48. As a direct and proximate result of the breach of fiduciary duties, these Defendants have been unjustly enriched, and the Plaintiffs have been damaged in an amount in excess of $25,000.00.

49. These Defendants, in committing wrongful acts described herein, acted with malice, fraud, and oppression toward Plaintiffs, in a conscious disregard of Plaintiffs' rights.

## FOURTH CLAIM FOR RELIEF

## (Against BAC HOME LOANS SERVICING  and RECONTRUST COMPANY and DOES 1-50 For QUIT TITLE Cal. Code Civ. Proc.761.010 et.seq.)

50. Plaintiffs re-allege and incorporated by reference in this Claim for Relief each allegation set forth in paragraphs 1 through 48 above.

51. Defendants BAC HOME LOANS SERVICING and RECONTRUST COMPANY Trustee Services wrongfully claim an interest in the Property.

52. The Property's legal description is REAL PROPERTY IN THE CITY OF ROHNERT PARK, COUNTY OF SONOMA, STATE OF CALIFORNIA DESCRIBED AS FOLLOWS: LOT 60 AS SHOWN ON THE MAP OF SPRECKELS PLACE UNIT 4,

FILED IN THE OFFICE OF THE COUNTY RECORDER JUNE 9, 1989, IN BOOK 439 OF MAPS, PAGES 9 THOUGH 12, SONOMA COUNTY RECORDS.

**Assessor's Parcel No.: 047-430-010**

53.   Plaintiffs claim title to the Property and seek an order from the Court confirming their title.

54.   BAC HOME LOANS SERVICING and RECONTRUST COMPANY Trustee Services claims title to the Property by virtue of forged deed of trust and voided deed of trust.

55.   A determination is sough as of the filing of this complaint.

56.   Plaintiffs pray for a determination of their title against adverse claim.

## FIFTH CLAIM FOR RELIEF

## Against All Defendant  BAC HOME LOANS SERVICING  and RECONTRUST COMPANY For PRELIMINARY INJUNCTION)

57.   Plaintiffs re-allege and incorporated by reference in this Claim for Relief each allegation set forth in paragraphs 1 through 95 above.

58.   Plaintiffs move this Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for a Preliminary Injunction against the Defendants enjoining them from taking any action to transfer any interest putatively held by the Defendants in the SOTELO, residence located at 7420 MITCHELL DR ROHNERT PARK CA 94928 or to encumber the Plaintiffs interest in that property.  In support of their Motion, the Plaintiffs state as follows:

a.   The Plaintiffs will suffer immediate and irreparable harm if the Defendants should transfer any interest in the SOTELO property;

b.   Plaintiffs have no adequate remedy at law should the Defendants affect such a transfer;

c.   Plaintiffs are likely to prevail on the merits of their claims;

      d.     The balance of the hardships tips decidedly in favor of granting the requested

injunction, in as much as the cost to the Defendants of enjoining any such transfer

is negligible when compared to the potential harm the Plaintiffs face if they lose

their dwelling and property prior to these proceedings ending.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against these Defendants, as to all

causes of actions, as follows:

1. For general and special damages according to proof;

2. For exemplary and punitive damages;

3. For Plaintiffs' reasonable attorneys' fees and costs necessary to obtain these relief;

4. For rescission of the Mortgage Loan;

5. For an order voiding any Deed of Trust in connection with the Mortgage Loan.

6. For permanent injunction against this Defendant, its subsidiary, affiliates, successors, agents, servants, officers, directors, employees, and all persons acting in concert with them, directly or indirectly, from engaging in the improper, unlawful, unfair, fraudulent, and/or deceptive conduct as described above and according to proof;

7. For an order of restitution requiring this Defendant to disgorge all revenues acquired from Plaintiffs by means of unlawful, unfair, fraudulent and/or deceptive acts or practices as more fully described above and according to proof;

8. For prejudgment interest as allowed by law;

9. For an order that this Defendant involuntary trustee for the proceeds and property resulting from BAC HOME LOANS SERVICING and /or its agent's wrongful actions of all money, proceeds and property wrongfully acquired by them;

10. For declaration and order that this Defendant release and re-convey any deed of trust or other document signed or entered into and subsequently recorded in connection with the Mortgage Loan;

11. For an order voiding any deed of trust and any other document signed or entered into by either or both of the Plaintiffs in connection with the mortgage loan;

12. For an order requiring this Defendant to return all monies, proceeds, payments, funds, revenues, fees and the like acquired from either Plaintiff as a result of or arising from the Mortgage Loan;

13. For an order Forfeiture of return of any loan proceeds;

14. For statutory damages according to proof;

15. For costs of suit herein incurred; and

16. For such other and further relief as this Court may deem just and proper.

Dated:        DECEMBER 28, 2010


REMEDIO SOTELO RODRIGUEZ, Plaintiff


OMAR RODRIGUEZ, Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VERIFICATION

I verify that the foregoing Complaint for Rescission has been reviewed by me; and that the allegations therein are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Rohnert Park, California on December 28, 2010.


REMEDIO SOTELO RODRIGUEZ, Plaintiff


OMAR RODRIGUEZ, Plaintiff

# EXHIBIT A

*2062868-MA*

Recording Requested By:
**FIRST AMERICAN TITLE COMPANY**
3333 MENDOCINO AVENUE
**SANTA ROSA, CALIFORNIA 95401**
Return To:
**CTX MORTGAGE COMPANY, LLC**
**P.O. Box 199113, FINAL DOCS**
**Dallas, TX 75219**



**2005143610**

OFFICIAL RECORDS OF
SONOMA COUNTY
FIRST AMERICAN TITLE CO. EEVE T. LEWIS
09/27/2005 13:47 TRD
RECORDING FEE: 67.00  **21** PGS
PAID

Prepared By:
**CAROLYN QUINONES**
3100 MCKINNON, CORP. CLOSING 2nd Floor
**DALLAS, TX 75201**

---
223303621

———————[Space Above This Line For Recording Data]———————

# DEED OF TRUST

MIN **100015902233036217**

## DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated     **9/26/2005**
together with all Riders to this document.
**(B) "Borrower"** is
  **REMEDIOS SOTELO RODRIGUES A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**
  **AND**
  **OMAR RODRIGUEZ AN UNMARRIED MAN**

Borrower's address is   **40 REGENTS CIRCLE, SANTA ROSA, CALIFORNIA 94928**
                        . Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is
        **CTX MORTGAGE COMPANY, LLC**
Lender is a   **A LIMITED LIABILITY COMPANY**
organized and existing under the laws of   **THE STATE OF DELAWARE**

---
**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**     Form 3005  1/01
CTX06A(CA) (0207)
Page 1 of 15
    VMP Mortgage Solutions (800)521-7291

P + 2 2 3 3 0 3 6 2 1 + C F 0 0 1 + 0 1 + 1 5 + 0 9 2 6 0 5 1 4 5 2

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

223303621

Lender's address is    **2828 NORTH HARWOOD**
**DALLAS, TX  75201-1516**
**(D) "Trustee"** is    **CTX MORTGAGE COMPANY, LLC**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated          **9/26/2005**
The Note states that Borrower owes Lender
**FOUR HUNDRED NINETY SIX THOUSAND & 00/100**                                    Dollars
(U.S. $      **496,000.00**     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than          **10/01/2035**
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider      [ ] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider             [ ] Planned Unit Development Rider  [ ] 1-4 Family Rider
[ ] VA Rider                  [ ] Biweekly Payment Rider         [ ] Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

CTX06A(CA) (0207)                    Page 2 of 15                    Form 3005  1/01

P + 2 2 3 3 0 3 6 2 1 + C F 0 0 1 + 0 2 + 1 5 + 0 9 2 6 0 5 1 4 5 2

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

223303621

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | SONOMA | |
|---|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | : |

**Real property in the City of Rohnert Park, County of Sonoma, State of California, described as follows:**
**LOT 60 AS SHOWN ON THE MAP OF SPRECKELS PLACE UNIT 4, FILED IN THE OFFICE OF THE COUNTY RECORDER JUNE 9, 1989, IN BOOK 439 OF MAPS, PAGES 9 THROUGH 12, SONOMA COUNTY RECORDS.**

Parcel ID Number:    047-430-010-000      which currently has the address of
      7420 MITCHELL DRIVE            [Street]
      ROHNERT PARK     [City], California    94928    [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or

CTX06A(CA) (0207)                Page 3 of 15                Form 3005  1/01

P + 2 2 3 0 3 6 2 1 + C F 0 0 1 + 0 3 + 1 5 + 0 9 2 6 0 5 1 4 5 2

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003. All rights reserved.

223303621

custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.



P+22303621+CF001+04+15+09260514 52

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

223303621

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

P + 2 2 3 3 0 3 6 2 1 + C F 0 0 1 + 0 5 + 1 5 + 0 9 2 6 0 5 1 4 5 2

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

223303621

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the

P + 2 2 3 3 0 3 6 2 1 + C F 0 0 1 + 0 6 + 1 5 + 0 9 2 6 0 5 1 4 5 2

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

**223303621**

work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or

P + 2 2 3 3 0 3 6 2 1 + C F 0 0 1 + 0 7 + 1 5 + 0 9 2 6 0 5 1 4 5 2

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003. All rights reserved.

223303621

regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement



P + 2 2 3 3 0 3 6 2 1 + C F 0 0 1 + 0 8 + 1 5 + 0 9 2 6 0 5 1 4 5 2

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

223303621

provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if

CTX06A(CA) (0207)          Page 9 of 15                    Form 3005  1/01

P + 2 2 3 0 3 6 2 1 + C F 0 0 1 + 0 9 + 1 5 + 0 9 2 6 0 5 1 4 5 2

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

223303621

acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

P + 2 2 3 3 0 3 6 2 1 + C F 0 0 1 + 1 0 + 1 5 + 0 9 2 6 0 5 1 4 5 2

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved

223303621

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon

P + 2 2 3 3 0 3 6 2 1 + C F 0 0 1 + 1 1 + 1 5 + 0 9 2 6 0 5 1 4 5 2

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

223303621

an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved.

223303621

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

P + 2 2 3 3 0 3 6 2 1 + C F 0 0 1 + 1 3 + 1 5 + 0 9 2 6 0 5 1 4 5 2

Documents provided by DataTree LLO via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

**223303621**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____


_____ *Remedios Sotelo Rodriguez* 9-26-05 (Seal)
REMEDIOS SOTELO RODRIGUES                                      -Borrower


_____

_____ (Seal)
                                   -Borrower


*Omar Rodriguez* _____ (Seal)          _____ (Seal)
OMAR RODRIGUEZ           -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                         -Borrower                                  -Borrower


CTX06A(CA) (0207)                    Page 14 of 15                    Form 3005  1/01



P + 2 2 3 3 0 3 6 2 1 + C F 0 0 1 + 1 4 + 1 5 + 0 9 2 6 0 5 1 4 5 2

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

223303621

State of California
County of *Sonoma*                                          } ss.   *Maria Anguiano*

On *9·26·05*          before me,   *Maria Anguiano*

personally appeared

      **REMEDIOS SOTELO RODRIGUES**

      **OMAR RODRIGUEZ**

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                           *Maria Anguiano* (Seal)

> **MARIA ANGUIANO**
> COMM. #1570774
> NOTARY PUBLIC - CALIFORNIA
> SONOMA COUNTY
> My Comm. Expires April 29, 2009

CTX06A(CA) (0207)                    Page 15 of 15                    Form 3005  1/01

P + 2 2 3 3 0 3 6 2 1 + C F 0 0 1 + 1 5 + 1 5 + 0 9 2 6 0 5 1 4 5 2

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved.

223303621

# ADJUSTABLE RATE RIDER

## (MTA-Twelve Month Average Index - Payment Caps)

THIS ADJUSTABLE RATE RIDER is made this **26th** day of **SEPTEMBER** , 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

**CTX MORTGAGE COMPANY, LLC**

(the "Lender") of the same date and covering the property described in the Security Instrument located at:

**7420 MITCHELL DRIVE**
**ROHNERT PARK, CA 94928**
[Property Address]

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

**2. INTEREST**
**(A) Interest Rate**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay

[PayOption MTA ARM Rider - Multistate]
[FE-5315 (0412) 10/04]
CW880R1 (040105)

Page 1 of 6



P + 2 2 3 3 0 3 6 2 1 + Z Z 8 6 3 + 0 1 + 0 6 + 0 9 2 6 0 5 1 4 5 2

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

223303621

interest at a yearly rate of      **1.000**      %.  The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### (B)  Interest Rate Change Dates

The interest rate I will pay may change on the      **1ST**   day of      **1/01/2006**      , and on that day every month thereafter.  Each date on which my interest rate could change is called an "Interest Rate Change Date."  The new rate of interest will become effective on each Interest Rate Change Date.  The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C)  Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index.  The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields").  The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.  The most recent Index figure as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

### (D)  Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **THREE AND 075/1000**     percentage point(s) **3.075**   % ("Margin") to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  This rounded amount will be my new interest rate until the next Interest Rate Change Date.  My interest rate will never be greater than   **9.950**  %.  Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

[PayOption MTA ARM Rider - Multistate]
[FE-5315 (0412) 10/04]                    Page 2 of 6
CW880R2  (040105)



P + 2 2 3 3 0 3 6 2 1 + Z Z 8 6 3 + 0 2 + 0 6 + 0 9 2 6 0 5 1 4 5 2

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003. All rights reserved.

223303621

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the 1ST day of each month beginning on 11/01/2005

I will make these payments every month until I have paid all of the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on 10/01/2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 650269
                                    DALLAS, TX 75265-0269
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S.
$ 1,595.34 unless adjusted under Section 3(F).

### (C) Payment Change Dates

My monthly payment may change as required by Section 3(D) below beginning on the 1ST day of 11/01/2006 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

### (D) Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment

[PayOption MTA ARM Rider - Multistate]
[FE-5315 (0412) 10/04]          Page 3 of 6
CW880R3  (040105)



P + 2 2 3 3 0 3 6 2 1 + Z Z 8 6 3 + 0 3 + 0 6 + 0 9 2 6 0 5 1 4 5 2

Documents provided by DataTree LLC on it's proprietary imaging and delivery system. Copyright 2003. All rights reserved.

223303621

and does not apply to any escrow payments Lender may require under the Security Instrument.  The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075.  The result of this calculation is called the "Limited Payment."  Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.  I also have the option to pay the Full Payment for my monthly payment.

**(E)   Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments.  For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2.  For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F)   Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to    **115**    percent of the Principal amount I originally borrowed.  My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases.  In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment.  This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap.  The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G)   Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again.  I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

[PayOption MTA ARM Rider - Multistate]
[FE-5315 (0412) 10/04]                      Page 4 of 6
CW880R4  (040105)



P + 2 2 3 3 0 3 6 2 1 + Z Z 8 6 3 + 0 4 + 0 6 + 0 9 2 6 0 5 1 4 5 2

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003. All rights reserved.

223303621

**(H)  Payment Options**

    After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

    **(i)  Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate.  The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

    **(ii)  Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

    **(iii)  15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments.  This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

    These Payment Options are only applicable if they are greater than the Minimum Payment.

## B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

    Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

    **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if:  (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

[PayOption MTA ARM Rider – Multistate]
[FE-5315 (0412) 10/04]
CW880R5 (040105)
                              Page 5 of 6



P + 2 2 3 3 0 3 6 2 1 + Z Z 8 6 3 + 0 5 + 0 6 + 0 9 2 6 0 5 1 4 5 2

Documents provided by DataTree LLC via it's proprietary imaging and delivery system  Copyright 2003, All rights reserved.

223303621

    To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

    If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in the Adjustable Rate Rider.



9-26-05

_____ (Seal)       _____ (Seal)
REMEDIOS SOTELO RODRIGUES  - Borrower                  - Borrower

_____ (Seal)       _____ (Seal)
OMAR RODRIGUEZ         - Borrower                  - Borrower

_____ (Seal)       _____ (Seal)
                 - Borrower                  - Borrower

_____ (Seal)       _____ (Seal)
                 - Borrower                  - Borrower

[PayOption MTA ARM Rider - Multistate]
[FE-5315 (0412) 10/04]                 Page 6 of 6
CW880R6 (040105)

P + 2 2 3 3 0 3 6 2 1 + Z Z 8 6 3 + 0 6 + 0 6 + 0 9 2 6 0 5 1 4 5 2

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge _____ Otis D.Wright II _____ and the assigned discovery Magistrate Judge is _____ Jay C. Gandhi _____.

The case number on all documents filed with the Court should read as follows:

### CV11-03705 ODW (JCGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| ☑ **Western Division** | ☐ **Southern Division** | ☐ **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

CV-18 (01/09)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☑) | DEFENDANTS |
|---|---|
| REMEDIO SOTELO RODRIGUEZ,<br>OMAR RODRIGUEZ | BAC HOME LOANS SERVICING,<br>RECONTRUST COMPANY |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☑ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

15 U.S.C. 1635 Breach of Truth-in-Lending

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | IMMIGRATION | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☑ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | | ☐ 871 IRS-Third Party 26 USC 7609 |

CV 11 - 03705 ODW (JCGx)

**FOR OFFICE USE ONLY:    Case Number:** _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
      ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
      ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
      ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, CA | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, CA | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles CA | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _Remedios Adela Rodz OMER RODRRIGUEZ_ 3-29-11

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |